■ In the Matter of GEORGE P. BAKER et al., as Trustees of the Property of Penn Central Transportation Company, Petitioners, v. JOSEPH V. SWIDLER et al., Constituting the Public Service Commission of the State of New York, et al., Respondents.— Proceeding under article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County) to set aside an order of the Public Service Commission (commission) adopted October 27, 1970. On January 7, 1969, after investigation and hearings, the commission authorized petitioners to file new tariff schedules designed to produce additional revenues. As part of the new fare structure, petitioners were ordered to institute reduced rate round trip tickets during nonrush hours from New York City to Westchester and back. There was already in existence a Manhattan trip ticket providing reduced rate off-hour travel from the suburbs to the city and back, and the new Westchester trip ticket (WTT) was requested by New York City for the benefit of noncommuters wishing to travel from the city to the suburbs. The Manhattan trip ticket provided for reduced one-day round trips during the week on trains other than those scheduled to arrive at Grand Central Terminal between 6:00 A.M. and 10:15 A.M. or to depart from Grand Central Terminal between 5:00 P.M. and 6:30 P.M. The restrictions established by petitioners in their filing of the WTT prohibited use of the tickets on the following trains: (1) trains leaving Grand Central Terminal between 5:00 P.M. and 6:30 P.M.; (2) trains arriving at Grand Central Terminal before 10:15 A.M.; (3) trains leaving Grand Central Terminal before 10:00 A.M., and (4) trains arriving at Grand Central Terminal between 5:00 P.M. and 7:00 P.M. On May 27, 1970, New York City petitioned the commission, objecting to the latter two of the four restrictions on the ground that they "did not seem to be in conformity with the Commission's Opinion and Order" of January 7, 1969. In their answer, petitioners claimed that their restrictions on the WTT were not unjustly discriminatory, and argued that revenue losses would result if the restrictions were lifted. The commission reopened the case "for the sole purpose of receiving evidence on the question of whether the rules and regulations presently applicable to the Westchester Trip Ticket impose restrictions in excess of those required to prevent interference with service by existing transportation or are otherwise unjustly discriminatory". After a hearing, the commission ordered the cancellation of those restrictions which prohibited the use of the WTT on trains leaving Grand Central Terminal between 9:15 A.M. and 9:59 A.M. and on trains arriving at Grand Central Terminal between 5:00 P.M. and 7:00 P.M. Petitioners petitioned for a rehearing contending, *inter alia,* that the effect of the WTT on revenues should be considered. On January 28, 1971, the commission denied the petition, stating that the record supported its previous findings, that the effect on the revenues had already been taken into account in authorizing WTT and that on re-exam-

ination of the record it could not find that liberalization of the restrictions would result in loss of revenues. The orders of October 27, 1970 and January 28, 1971 are challenged in this proceeding. There is no merit in petitioners' contention that the commission erred in placing the burden of proof on it. Sections 29 and 49 of the Public Service Law (now Transportation Law, §§ 99, 119) provide that "At any hearing involving a rate, the burden of proof" shall be upon the carrier. Since the proceeding involved a determination as to whether a particular rate (WTT) would be applied to certain trains, the rule of sections 29 and 49 is clearly applicable. Petitioners' next contention is that the 1969 order of the commission found petitioner entitled to increased revenues, and that the decision of the commission was arbitrary and capricious as was its denial of petitioners' petition for rehearing in order to produce additional evidence on the question. Although the proceeding was limited in scope, the record is replete with instances where evidence on behalf of the petitioners relating to revenues was received. The commission's re-examination of the record afforded petitioners the full review of the evidence to which they were entitled. The only manner in which WTT could adversely affect revenues would be by diverting ridership from other trains, a fact which petitioners tried to establish. There was evidence adduced on both sides of this question, from which the commission could conclude, that no relationship between the WTT restrictions and alleged revenue losses had been established. We have examined the remainder of petitioners' contentions and find them to be without merit. The review of the commission's order in an article 78 proceeding calls upon us to determine whether the ultimate result reached by the commission is supported by substantial evidence. We are satisfied that on the record proper consideration was given and that there is substantial evidence to support the determination of the commission. Determination confirmed, without costs, petition dismissed and stay vacated. Herlihy, P. J., Reynolds, Staley, Jr., Greenblott and Cooke, JJ., concur.